LECHE, J.
The matter in controversy in this case is whether the succession of Mrs. Catherine M. Aiken and Charles K. Burdeau, or either of them, should be held liable for $2,168.42, as attorney’s fees clairúed by Mr. Carleton Hunt.
Mrs. Aiken died in the city of New Orleans on March 17, 1915. Charles K. Burdeau, a nephew by marriage, had managed the affairs of the deceased for some 30 years, and Mr. Carleton Hunt, a respected and honored member of the bar, and a tenant of the deceased, had been her legal adviser for several years. Some time previous to her death, Mrs. Aiken had consulted Mr. Hunt in regard to her will, and though neither Mr. Hunt nor Burdeau knew the contents of the will, which had been made in olographic form, they each were under the impression, when Mrs. Aiken died, that Charles K. Burdeau had been named therein as testamentary executor. With this impression upon their minds, immediately after the death of Mrs. Aiken, an interview took place between Burdeau and Mr. Hunt, and at that interview the employment of an attorney to settle the succession was discussed. Burdeau says that he called upon Mr. Hunt in order to find out how much Mr. Hunt, if employed, would charge for his professional services. After a good deal of discussion, Mr. Hunt suggested that a contract of employment be made in writing, and, with this end in view, he dictated the following letters, which were signed by the parties:
“Dear Mr. Burdeau: I agree to undertake the professional duty of conducting as attorney and counselor at law succession of Mrs. Catherine Aiken, for a compensation of 2% per cent, on the amount of the inventory of the succession.
“It is understood that if Mrs. Aiken has named me as attorney of her estate, that my right is reserved to charge otherwise, or that I am free from the foregoing limitation of charge.
“Very respectfully, your obedient servant,
“Carleton Hunt.
“New Orleans, March 18, 1915.”
*67 “New Orleans, March 18, 1915.
“Dear Mr. Hunt: In answer to your letter of even date regarding to your services as attorney in the matter of the succession of Mrs. Catherine ,M. Aiken, I agree to pay to you 2% per cent, on the amount of the succession for acting as attorney of the succession.
“I also agree if Mrs. Aiken has named you in her will as attorney of her succession that you are not limited in your charge to said 2% per cent. [Signed] Chas. K. Burdeau.”
Two days later the following letter was written by Burdeau and delivered to Mr. Hunt:
“New Orleans, La., March 20, 1915.
“Mr. Carleton Hunt, Attorney at Law— Dear Sir: With reference to our correspondence with respect to your employment as the attorney of the estate of Mrs. Aiken. I beg leave to advise that my letter written to you on the 18th inst., was before the will was found, and before the contents of the will were known to me or the parties in interest, I beg to advise that since then the will has been found, and I find that the same provides for the appointment of Mr. M. J. Murphy as well as myself as testamentary executors. I beg to advise that I have submitted the correspondence with regard to your employment, to my coexocutor, and to the other parties in interest, and I am instructed to say that they will not confirm or carry out the arrangements referred to in this correspondence, and you will therefore consider the arrangements referred to null and void. Under the circumstances kindly consider the entire matter off.
“Yours tnily, Charles It Burdeau.”
Burdeau, acting in accordance with the tenor of his last letter to Mr. Hunt, secured the services of other counsel and then proceeded to have the will of Mrs. Aiken probated and executed and to have the succession settled.
Mr. Hunt then instituted the present proceeding against the succession, through the testamentary heirs of Mrs. Aiken, and against Charles K. Burdeau individually.
On the trial of the case in the district court, a great deal of testimony was taken and offered in evidence, much of it with regard to what transpired at the interview between Burdeau and Mr. Hunt, and no inconsiderable part of it in relation to the validity and binding effect, if any, of a contract such as the one forming the basis of the present suit.
The district court refused Mr. Hunt’s demand against the succession of Mrs. Aiken, but held Charles K. Burdeau personally liable for the full amount thereof.
[1-3] The only statutory law having any direct bearing upon the question herein submitted for decision is to be found in article 1682, C. C., which reads as follows:
“The expenses incurred by the executor for affixing the seals, for the inventory, for the accounts and the other charges relative to his functions, shall be defrayed out of the succession.”
No precedent is cited by counsel, and we have found none, so that the matter is res nova.
That one who has been appointed executor of a will, or for that matter any one who has an interest in having a will probated and executed, may secure the services of an attorney at the expense of the succession, to properly conduct the necessary legal proceedings, is not debatable. The choice of the attorney is primarily with the person named as executor in the will, and that such choice must be made before that person has qualified and become executor in fact is equally self-evident. That is what was done by Burdeau in the present case. Burdeau believed at the time he negotiated with Mr. Hunt that Mrs. Aiken had appointed him as the executor of her will. Mr. Hunt was of the samé opinion, but neither of them knew it as an absolute fact. Burdeau and Mr. Hunt, being then under the same impression, did not limit themselves to a preliminary agreement solely to the effect that Mr. Hunt, as the choice of Burdeau, would undertake as attorney to conduct the mortuary proceeding ; but they went further and entered into a contract which purports on its fape to *69 bind tbe parties and to bind tbe succession to pay Mr. Hunt' a stipulated honorarium of 2y2 per cent, on tbe amount of tbe inventory. Tbe understanding of tbe parties as to the binding effect of that contract is a ‘ much controverted issue of fact. Burdeau contends that Mr. Hunt assured him that in signing tbe prepared letter be would bind no one; but this is vehemently denied by Mr. Hunt, who says that what be told Burdeau was, not that tbe written contract was not binding, but that tbe preliminary negotiations bad previous to the signing of tbe letters were not binding. Whatever may have been tbe views and understandings of tbe parties, who are each, no doubt, absolutely sincere in their contentions, need not, in our opinion, be decided, for the reason that we do not consider tbe written agreement as one which is binding and enforceable at law. To bold that such a contract is legal and binding would be to place every testamentary succession, tbe heirs and creditors, at tbe complete mercy of tbe executor.
An executor is tbe mandatary of tbe testator, and bis authority is limited to a faithful execution of tbe dispositions of tbe will; be can exercise no power unless conferred by law, and we know of no law conferring upon him tbe power to make such a contract as tbe one in tbe present suit. It may be that an executor, with tbe consent of all parties in interest,- including tbe heirs when they are sui juris, could make a valid and binding contract of employment with an attorney; but it is not pretended that such consent was obtained by Burdeau. One who is appointed executor may select an attorney to conduct tbe necessary legal proceedings in probating tbe will, and be must necessarily do so before be can qualify; but tbe compensation for such legal services is always subject to tbe approval of all parties in interest and can only be definitely fixed with tbe approval of the court.
Believing then that tbe contract entered into with Mr. Hunt by Charles K. Burdeau, in anticipation of bis appointment as testamentary executor, was ultra vires, we bold that it is null and void and not susceptible of enforcement.
[4] Tbe district court condemned Burdeau personally for tbe amount of Mr. Hunt’s claim. Tbe only theory under which we can conceive that Burdeau could be held personally liable would be that be should have warranted bis authority to act for bis principal, when in point of fact be bad no such authority. But Burdeau made no such warranty, and Mr. Hunt knew as well as did Burdeau that tbe latter bad no authority; all tbe facts and surrounding circumstances attending tbe transaction being equally well known by each of tbe parties. There was neither misrepresentation nor concealment on tbe part of Burdeau, and be should not have been held personally liable for Mr. Hunt’s claim.
For these reasons it is ordered that that part of tbe judgment appealed from, which condemns Charles K. Burdeau individually to pay to Mr. Carleton Hunt tbe sum of $2,168.42 be avoided and reversed, and that tbe demand of Mr. Carleton Hunt against Charles K. Burdeau individually be refused, and otherwise that tbe judgment appealed from be affirmed at tbe cost of Mr. Carleton Hunt.
MONROE, C. J., takes no part.